[Doc. No. 257]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ARTHUR MONTANA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF CAPE MAY BOARD OF FREEHOLDERS, et al.,<br><br>　　　　　　Defendants. | Civil No. 09-755 (NLH/JS) |

**MEMORANDUM OPINION AND ORDER**

　　　The issue before the Court is whether plaintiff should be compelled to undergo a defense psychiatric examination. This matter is before the Court on the Cape May defendants' "Motion to Compel Rule 35(a) Exam of the Plaintiff with Defendants' Expert Dr. Gary Glass." [Doc. No. 257]. Defendant Diane Lanzetta joins in the motion. [Doc. No. 258]. Plaintiff opposes the motion. [Doc. Nos. 251, 259]. The Court heard oral argument on April 16, 2013. For the reasons to be discussed, defendants' motion is DENIED and plaintiff will not be compelled to attend defendants' scheduled psychiatric examination.[1]

Background

　　　The fact and procedural background of this matter has been set forth in numerous Opinions and Orders and is obviously well-known

---

[1] On April 19, 2013, the Court entered a Text Order denying defendant's motion. [Doc. No. 261]. This Opinion and Order provides the reasoning for the Court's decision.

to the parties. The salient facts are that plaintiff claims, <u>inter alia</u>, that defendants harassed and retaliated against him, and eventually terminated his employment, for complaining about work-related issues. Trial is scheduled to start on July 15, 2013. The Joint Final Pretrial Conference took place on April 19, 2013. The Court expects to enter the final version of the Joint Final Pretrial Order in the near future. Defendants' and plaintiff's motions for summary judgment [Doc. Nos. 229, 230, 234] have been filed; as of this date no party has served its opposition. Plaintiff is claiming emotional distress damages but characterizes them as the "garden variety" type. Plaintiff denies he received any professional mental health treatment for his claimed emotional distress and is not seeking to use at trial any mental health records. Plaintiff will also not call at trial a medical expert. Plaintiff recently produced the expert report of Gary M. Naime, Ph.D. <u>See</u> Declaration of Virginia A. Pallotto, Esquire, Exhibit C. [Doc. No. 257-3]. Plaintiff describes Dr. Naime as a "workplace bullying or mobbing" expert.

The essence of defendants' request for a defense psychiatric examination is their contention that Naime's report put plaintiff's mental health condition "in controversy." Defendants argue that Dr. Naime is a psychologist and they need plaintiff's psychiatric examination to rebut Dr. Naime's conclusions. Defendants also argue that plaintiff's "personality and emotional state" are central to the case. In support of their application defendants

produced an April 15, 2013 letter from Gary Glass, M.D., the defense psychiatrist scheduled to examine plaintiff. Dr. Glass is in the private practice of general and forensic psychiatry. Dr. Glass concluded that Dr. Naime's report:

> cries out for psychiatric review by a psychiatrist who has a background and experience in organizations, workplace conflicts and, perhaps most of all qualifications and standards of mental health professionals and the art of diagnosis and adapting psychiatric principles and standards to organizations.

See Declaration of V. Pallotto, Exhibit J at 3. Dr. Glass also writes:

> References are made in [Naime's] report about the moods and emotional styles of Mr. Montana and fellow counselors. Dr. Naime suggests that some of the problems that arose were due to Mr. Montana's cognitive ability coupled with his, "Assertive, won't back down personality."

Id.[2]

Discussion

Defendants' request to compel plaintiff's psychiatric examination is controlled by Fed. R. Civ. P. 35(a) which reads:

> The Court where the action is pending may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause and on notice to all parties and the person to be examined.

The seminal case interpreting Rule 35 is Schlagenhauf v. Holder,

---

[2]The Court accepts plaintiff's counsel's representation made at oral argument that he inadvertently failed to notify defendants that plaintiff objected to the exam. See February 7, 2013 Order [Doc. No. 206]. Thus, there was no deliberate oversight by plaintiff and no intentional waiver of his objection to Dr. Glass's exam.

3

379 U.S. 104 (1964).  In that case the Supreme Court held, inter alia, that a mental examination may be ordered only when the mental condition of a party is "in controversy" and there is "good cause" to order the examination.  Id. at 118.  These requirements "are not met by mere conclusory allegations of the pleadings-nor by mere relevance to the case-but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination."  Id.  The Supreme Court described the scrutiny a court must apply before ordering a Rule 35 examination: "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule.  To hold otherwise would mean that such examinations could be ordered routinely.... The plain language of Rule 35 precludes such an untoward result."  Id. at 121-122.  The requirement in Rule 35 that the mental condition of a party be "in controversy" is not a "mere formality."  Id. at 118.

The scheduling of defense medical exams was discussed in detail in Bowen v. Parking Auth. of Camden, 214 F.R.D. 188 (D.N.J. 2003).  The Court agrees with the reasoning and holding in Bowen and adopts it in toto.  After discussing the background of Rule 35, the Bowen decision noted why courts struggle with an appropriate test to review requests for Rule 35 examinations.  "Hanging in the balance, of course, are on the one side the plaintiff's

4

constitutional right to privacy of mind and body and on the other the defendant's interest in obtaining all relevant information for defense of the case." Id. at 192.

As noted in Bowen, "most courts agree that for a plaintiff's mental status to be 'in controversy' there must be more than 'garden variety' emotional distress allegations." Id. at 193. The court also noted that plaintiff will be required to undergo a mental examination when, in addition to a claim of emotional distress, one or more of the following elements are present: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy' withing the meaning of Rule 35. Id. (quoting Turner v. Imperial Stores, 161 F.R.D. 89, 95 (S.D. Cal. 1995)).

If the Court puts aside Dr. Naime's report, there is little question plaintiff's examination would be denied. Plaintiff is not asserting a separate claim for intentional or negligent infliction of emotional distress, he is not claiming he suffered a specific mental or psychiatric injury or disorder, he is not claiming unusually severe emotional distress, he is not offering expert testimony to support a claim of emotional distress, and he is not conceding his mental condition is in controversy within the meaning

5

of Rule 35. For these reasons the Court rejects defendants' argument that plaintiff presents more than a "garden variety" emotional distress claim. Plaintiff's claims are typical of those asserted in workplace employment cases. Defendant's "cherry picking" of the record does not change this fact. The fact that plaintiff is arguing defendants attacked his character does not put plaintiff's psychiatric condition "in controversy." <u>See</u> Defendants' Brief at 8.

Defendants' argument that plaintiff alleges "severe" emotional distress overstates the evidence. <u>See</u> Defendants' Brief at 16. The fact that plaintiff is complaining of emotional distress from the time defendants' alleged harassment started (2008) until when he stopped working for Cape May (December 1, 2011) does not make plaintiff's claim "severe." Plaintiffs typically claim emotional distress during a long period of employment. Further, the length of plaintiff's claim is only one factor to consider in determining if a claim is severe. It is true plaintiff is alleging one instance of an alleged heart problem. However, plaintiff has not produced a causation medical expert report so it is doubtful the testimony will be admitted at trial. Further, plaintiff is not alleging the problems continue.

Since plaintiff's emotional distress claim is typically asserted in employment/workplace cases, and is a "garden variety" claim, the key question to address is whether Dr. Naime's report puts plaintiff's mental health "in controversy" within the meaning

of Rule 35.  The Court finds that Dr. Naime's report does not put plaintiff's mental health "in controversy" and there is no "good cause" for the examination.  Thus, the Court will deny defendants' motion.

Rather than focusing on plaintiff's mental health, Dr. Naime's report focuses on defendants' actions.  The Court disagrees with Lanzetta that "[t]he sum and substance of [Mr. Naime's] ... report is to discuss the Plaintiff's reaction to alleged retaliatory acts by the Defendants."  April 18, 2013 Letter Brief at 2 [Doc. No. 258].  Instead, the essence of Dr. Naime's report is not the effect of defendants' actions on plaintiff, but instead the nature of defendants' actions.  This is not changed, as Lanzetta argues, by the fact that Dr. Naime has a Master's Degree in psychology, that he has taught social psychology and that his presentations and publications are linked with psychology.  Id.  For example, Dr. Naime concludes plaintiff faced "intimidation and abuse."  April 1, 2013 Report at 8, Declaration of Virginia A. Pallotto, Esquire, Exhibit C [Doc. No. 257-4].  He states, "Art Montana faced two cruel, destructive, bullying managers."  Id. at 9.  Dr. Naime's ultimate conclusion is that plaintiff was a victim of "workforce bullying and mobbing" and that defendants' "bullying culture ... caused [plaintiff] to experience a hostile work environment, disruption of his career ... and ultimately loss of the job."  Id.  The Court does not read Dr. Naime's report as focusing on the effect of the alleged bullying and harassment on plaintiff' mental

7

condition.  This is evidenced by the fact that plaintiff was not examined by Dr. Naime and never spoke with him.  See Plaintiff's April 18, 2013 Letter Brief, Attached Affidavit of Arthur Montana ¶¶3, 4.[3]  To be sure, there are references to plaintiff's personality in Dr. Naime's report.  However, this is not the focus of his opinions which are directed to the workplace conditions plaintiff faced.  This does not put plaintiff's psychiatric condition "in controversy."

Defendants argue plaintiff's personality and character is a central issue in the case.  For example, Lanzetta argues:

> At the heart of this case is the Plaintiff's personality. It is the Plaintiff's inability to accept supervision, his inability to get along with co-workers, his inability to understand his role in the organization and his inability to compromise, that are at issue here.  The Defendants need to show what Plaintiff perceived as retaliation was actually appropriate workplace discipline that he simply would not recognize as such.

April 18, 2013 Letter Brief at 2.  Although this may be part of defendants' defense strategy it does not mean plaintiff's mental health is "in controversy" within the meaning of Rule 35.  If the Court accepted defendants' argument then defense psychiatric examinations would become routine in workplace/employment cases. Defendants typically blame a plaintiff's personality for causing friction. In this case defendants argue plaintiff has "oppositional defiant" disorder and is a "bully."  Brief at 16.  Defendants could

---

[3]This Court has significant doubts that Dr. Naime's report is admissible at trial.  Nevertheless, at this stage of the case it is not this Court's role to decide if Dr. Naime's opinions will be admissible.

8

make the same argument in almost every similar case. Compelling a defense psychiatric examination in such circumstances is not warranted or appropriate pursuant to the "in controversy" and "good cause" requirements of Rule 35. The fact that defendants want to blame plaintiff's "personality" for plaintiff's problems does not warrant a defense psychiatric examination. Albeit, within the constraints of the Rules of Evidence defendants can make their "personality" arguments at trial. Defendants do not need plaintiff's psychiatric examination on April 22, 2013 to testify about plaintiff's personality in 2008.

Dr. Glass's letter does not help defendants. He is not a purported "workplace bullying expert" who will rebut the crux of Dr. Naime's opinions. Instead, Dr. Glass represents himself to be a clinical and forensic psychiatrist. See April 15, 2013 Letter Brief with Attached Resume. The Court fails to see how Dr. Glass's psychiatric examination of plaintiff on April 22, 2013, is relevant to whether plaintiff's personality is at fault for what plaintiff experienced when he worked for Cape May through December 1, 2011. Although plaintiff claims emotional distress through December 1, 2011, the key events at issue occurred in 2008 (the alleged retaliation related to plaintiff's complaints about Judge Conner) and 2010 (the year the "Barnett Reports" criticizing plaintiff were prepared). Again, given the passage of time between these events and April 22, 2013, there is no good cause for Dr. Glass's examination. See McLaughlin v. Atlantic City, C.A. No. 05-2263

9

(RMB), 2007 WL 1108527 (D.N.J. Apr. 10, 2007)(denying plaintiff's request in April 2007 for defendant's mental examination to evaluate his condition on the relevant date at issue in the case-- October 12, 2003).

Given the fact intensive analysis that is required to determine if there is good cause to order a defense psychiatric exam, it is not surprising that defendants cite cases that ordered the exam. Nevertheless, the cases defendants cite are inapposite. In Mandujano v. Geithner, No. 10-01226 LB, 2011 WL 825728, *11 (N.D. Cal. Mar. 7, 2011), the court concluded plaintiff's mental condition was clearly "in controversy" because plaintiff alleged he was discriminated against due to alcoholism, which the court determined was, at least in part, a mental disease. Similarly, in Barnes v. Am. Tobacco Co., No. 96-5903, 1997 WL 414943, at *3 (E.D. Pa. July 22, 1997), plaintiff's mental condition was "in controversy" because the underlying legal theory in the case involved "whether plaintiffs are addicted or nicotine dependent," which is a determination that involves "a multitude of psychological and behavioral factors." Further, in Ali v. Wang Labs., Inc., 162 F.R.D. 165, 167-68 (M.D. Fla. 1995) and Thiessen v. Gen. Elec. Cap. Corp., 178 F.R.D. 568 (D. Kan. 1998), plaintiff's mental examinations were permissible because the plaintiffs alleged more than "garden variety" emotional distress claims. See also Fatena Dahdal v. Thorn Americas, Inc. d/b/a Rent-A-Center, No. 97-2119-GTV, 1998 U.S. Dist. LEXIS 832 (D. Kan. Jan.

10

28, 1998) (ordered exam in sexual harassment and gender discrimination lawsuit where the plaintiff claimed she suffered from depression and suicidal thoughts and she underwent pre-suit mental health treatment for sexual abuse); Womack v. Stevens Transport, Inc., 205 F.R.D. 445 (E.D. Pa. 2001)(ordered exam where plaintiff claimed he could not work because of physical injuries but the records of plaintiff's treating doctor noted the cause may be due to psychological problems).

Cape May's request for costs/sanctions is denied. First, since Cape May's motion was denied it is not entitled to this relief. See Fed. R. Civ. P. 37(a)(5)(authorizing the award of expenses where a discovery motion is granted). Second, the Court will not compel plaintiff to pay for a motion the Court views as "overkill." The Cape May defendants filed a thirty (30) page brief, with a Declaration and supporting papers in excess of one hundred pages. This was completely unnecessary. After oral argument on April 16, 2013, the Court agreed to accept additional papers the parties wanted to file. Since the Court already had Dr. Glass's letter and Dr. Naime's report, and the parties knew or should have known that the Court was already familiar with Rule 35 case law (see McLaughlin, supra), the Court expected to receive short submissions. Lanzetta's letter brief was four pages. Plaintiff filed a two-page letter and affidavit. Cape May's written submission largely repeat what the Court heard at oral argument on April 16, 2013. The Court will not require plaintiff

11

to pay for Cape May's excessive and unnecessary work.

The Court will, however, require plaintiff to pay Dr. Glass's reasonable cancellation fee, if any.  Defendants did not know until April 10, 2013 that plaintiff would not appear on April 22, 2013.  In view of the upcoming trial date, defendants had to keep the appointment in order to produce Dr. Glass's report before trial.  The problem would have been avoided if plaintiff complied with the Court's February 7, 2013 Order.  Further, although as early as February 19, 2013, defendants notified plaintiff of his scheduled exam on April 22, 2013, plaintiff did not notify defendants that he would not appear until April 10, 2013.  Under these circumstances, it is equitable for plaintiff to pay Dr. Glass's cancellation fee rather than defendants.

Accordingly, for all the foregoing reasons,

IT IS HEREBY ORDERED this 22nd day of April, 2013, that defendants' motion asking the Court to Order plaintiff to appear for a defense examination by Dr. Gary Glass on April 22, 2013 is DENIED;[4] and

IT IS FURTHER ORDERED that defendants' request for sanctions/costs is DENIED; and

---

[4]The Court makes it clear that it is not barring Dr. Glass from serving an expert report.  The Court's holding only bars defendants from compelling plaintiff to undergo a defense psychiatric exam.  Defendants are free to offer an expert rebuttal to Dr. Naime but it must be done without plaintiff's psychiatric exam.

12

IT IS FURTHER ORDERED that plaintiff shall pay Dr. Glass's reasonable cancellation fee (if any) caused by the late cancellation of plaintiff's scheduled April 22, 2013 examination.

s/Joel Schneider<br>
JOEL SCHNEIDER<br>
United States Magistrate Judge