ARTHUR MONTANA,

       Plaintiff,                CIVIL NO. 09-0755(NLH/JS)

    v.

COUNTY OF CAPE MAY BOARD OF           **OPINION**
FREEHOLDERS, et al.,

       Defendants.

**APPEARANCES:**

LOUIS P. MCFADDEN, JR.
MCFADDEN LAW FIRM
222 NEW ROAD
CENTRAL PARK EAST, SUITE 307
LINWOOD, NJ 08221
And
MARK R. SANDER
SANDER & CARSON, P.C.
WILLOW RIDGE EXECUTIVE PARK
750 ROUTE 73 SOUTH, SUITE 205
MARLTON, NJ 08053

*On behalf of plaintiff Arthur Montana*

MARC I. BRESSMAN
SUSANNA J. MORRIS
BUDD LARNER, PC
1939 ROUTE 70 EAST
CHERRY HILL, NJ 08003
And
VIRGINIA A. PALLOTTO
BUDD LARNER, PC
150 JOHN F. KENNEY PARKWAY
SHORT HILLS, NJ 07078-0999

*On behalf of defendants County of Cape May Board of Freeholders*
*and Barbara Bakley-Marino*

ROBYN F. MCGRATH
BARBARA A. O'CONNELL
SWEENEY & SHEEHAN
SENTRY OFFICE PLAZA
216 HADDON AVENUE
SUITE 500
WESTMONT, NJ 08108

*On behalf of defendant Diane Lanzetta*

**HILLMAN**, District Judge

Before the Court are two motions appealing orders entered by the magistrate judge assigned to this matter. The first motion is an appeal of Orders entered on April 19, 2013 and April 22, 2013 [docket nos. 261, 268] denying defendants' motion to compel a psychiatric examination of the plaintiff. The second motion is an appeal of an Order entered on May 10, 2013 [docket no. 282] denying reconsideration of plaintiff's request for leave to serve a public sector budget expert or fiscal expert report. For the reasons set forth below, both Appeals will be denied.

I.    **BACKGROUND**

Plaintiff was employed as a Juvenile and Family Crisis Counselor by defendant County of Cape May Board of Freeholders ("Cape May") from 1991 until 2011. Defendant Diane Lanzetta was

the Director of the Youth Services Department for Cape May.

Defendant Barbara Bakley-Marino was an attorney and Director of

Human Resources for Cape May.  Plaintiff brought claims pursuant

to 42 U.S.C. § 1983 for alleged violations of his First

Amendment rights, as well as hostile work environment and

retaliation claims under the New Jersey Conscientious Employee

Protection Act (CEPA).  Plaintiff alleges he suffered economic

damages, and emotional distress as a result of workplace

harassment.

## II.  **JURISDICTION**

The Court exercises subject matter jurisdiction over

plaintiff's federal civil rights claims pursuant to 28 U.S.C. §

1331 (federal question jurisdiction).  The Court exercises

supplemental jurisdiction over plaintiff's related state law

claims pursuant to 28 U.S.C. § 1367.  The district court has

authority to rule on appeals from orders entered by the

magistrate judge regarding pretrial matters pursuant to 28

U.S.C.A. § 636(b)(1)(A).

## III. **DISCUSSION**

### A.    **Standard of Review for Appeal of Magistrate Judge's Order**

A United States magistrate judge may hear and determine any

non-dispositive pretrial matter pending before the court

pursuant to 28 U.S.C. § 636(b)(1)(A), and a district court judge will only reverse a magistrate judge's opinion on pretrial matters if it is "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L. Civ. R. 72.1(c)(1)(A).  A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," South Seas Catamaran, Inc. v. M/V Leeway, 120 F.R.D. 17, 21 (D.N.J. 1988) (citation omitted), and a ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law, Gunter v. Ridgewood Energy Corp., 32 F.Supp.2d 162, 164 (D.N.J. 1998), but a "district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review," Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000), and the party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law, Exxon Corp. v. Halcon Shipping Co., Ltd., 156 F.R.D. 589, 591 (D.N.J. 1994).

**B.   Appeal of Magistrate Judge's Denial of Defendants'
       Motion to Compel Plaintiff to Submit to Psychiatric
       Evaluation.**

Defendants[1] appeal the magistrate judge's order denying

their motion asking the Court to order plaintiff to appear for a

psychiatric examination.[2]   The underlying facts are set forth in

the magistrate judge's opinion and order [docket no. 268] and,

therefore, will only be outlined here.

Following the late production in 2012 by defendants of a

large volume of documents, plaintiff retained a "workplace

mobbing/bullying"[3] expert, Gary M. Naime, PhD.   The late

production included what is referred to as the "Barnett Reports"

which are investigative reports based on an internal

investigation in 2010 of plaintiff by defendants, an

---

[1] Defendant Diane Lanzetta filed the motion, and defendants
Barbara Bakley-Marino and County of Cape May Board of
Freeholders joined in the motion.

[2] The magistrate judge also denied defendants' request for
sanctions and costs, and ordered the plaintiff to pay any
reasonable cancellation fee caused by the late cancellation of
plaintiff's scheduled examination.   No party appeals these
specific decisions.

[3] Workplace mobbing is described by plaintiff's proposed expert,
Gary Naime, PhD, as a type of bullying where a person suffers
emotional abuse due to co-workers who collectively harass him or
her on a consistent basis.

investigation unknown to plaintiff at the time.  Plaintiff states that the Barnett Reports contain false and defamatory content about him.  In response, plaintiff produced Dr. Naime's report which concluded that plaintiff was a victim of workplace mobbing and bullying.

Defendants argue that the Naime report, along with plaintiff's ongoing allegations of emotional distress, put plaintiff's emotional abuse claims "in controversy."  They argue that since Dr. Naime is a psychologist, that plaintiff should submit to a psychiatric examination by a doctor of their choosing, Gary Glass, M.D., in order to rebut Dr. Naime's conclusions regarding plaintiff's emotional state.[4]

Conversely, plaintiff argues that he asserts only "garden variety" emotional distress claims and did not undergo an in-person examination by Dr. Naime.  Plaintiff states that Dr. Naime was retained to assess certain workplace incidents to determine if plaintiff was a victim of workplace bullying or mobbing, and not to evaluate his emotional or psychological condition.  Plaintiff denies receiving any mental treatment and

---

[4] Defendants have produced a written report dated May 29, 2013, by Dr. Glass based on various discovery materials, including Dr. Naime's report.

maintains that he will not be using any mental health records, or call a mental health expert, at trial.  Plaintiff is not asserting a separate claim for intentional infliction of emotional distress.

Defendants moved to compel a mental examination of plaintiff pursuant to Federal Rule of Civil Procedure 35.  The magistrate judge denied their motion, and defendants now appeal.

Rule 35 of the Federal Rules of Civil Procedure governs requests for physical and mental examinations.  Rule 35(a) states:

> (1) In General. The court where the action is pending may order a party whose mental or physical condition--including blood group--is **in controversy** to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
>
> (2) Motion and Notice; Contents of the Order. The order:
>
>> (A) may be made only on motion for **good cause** and on notice to all parties and the person to be examined; …

Fed.R.Civ.P. 35(a)[5] (bold emphasis added).

Rule 35 was examined by the Supreme Court in <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 117, 85 S.Ct. 234, 242, 13 L.Ed.2d 152 (1964).  In <u>Schlagenhauf</u>, the Supreme Court noted the additional requirements of "in controversy" and "good cause" that appear in Rule 35.  The Supreme Court ruled that the "'in controversy' and 'good cause' requirements of Rule 35 … are not met by mere conclusory allegations of the pleadings-nor by mere relevance to the case-but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination."  <u>Id.</u> at 118; <u>see</u> <u>Ali v. Wang Laboratories, Inc</u>., 162 F.R.D. 165, 167 (M.D.Fla. 1995) (The Court's assessment of whether the "in controversy" and "good cause" requirements have been met requires a greater showing than for other types of discovery under Fed.R.Civ.P. 26).  Moreover, the "good cause" requirement must be higher than the general relevancy standard governing discovery because, otherwise, "[t]he specific requirement of good cause would be

_____

[5] Section (B) of Rule 35(a)(2) which outlines the scope of the examination is not included because it is not pertinent to the issue before the Court.

meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b)." _Schlagenhauf_, 379 U.S. at 117. Thus, Rule 35 is meant to act as a shield against unnecessarily subjecting a plaintiff to a mental examination on just general allegations of emotional distress, or using it as a means to harass the plaintiff.

Whether to compel a mental examination of a plaintiff is a recurring theme in employment discrimination cases. _See_ _Bowen v. Parking Authority of City of Camden_, 214 F.R.D. 188, 189 – 91 (D.N.J. 2003); _Thiessen v. General Electric Capital Corp._, 178 F.R.D. 568, 569 n. 1 (D. Kan. 1998); _Dahdal v. Thorn Americas, Inc._, No. 97–2119, 1998 WL 37532, at *1 (D.Kan. Jan. 28, 1998); _Ali v. Wang Laboratories, Inc._, 162 F.R.D. 165, 167-68 (M.D.Fla. 1995); _Bridges v. Eastman Kodak Co._, 850 F.Supp. 216, 221 (S.D.N.Y. 1994).

Often, as here, the plaintiff will allege in his complaint that he suffered emotional distress as a result of the defendants' actions. Generally, if the only evidence of plaintiff's emotional distress are general allegations in a complaint or general answers to interrogatories, then such allegations often amount to "garden variety" emotional distress

and would not compel a mental examination of the plaintiff.  See
Bowen, 214 F.R.D. at 193 (most courts agree that for a
plaintiff's mental status to be "in controversy," more than
"garden variety" emotional distress allegations must be part of
the underlying claim.) (citations omitted); Thiessen, 178 F.R.D.
at 569 (finding that "plaintiff was simply making what courts
have described in shorthand as a 'garden variety' emotional
distress claim, one which amounted to no more than an attempt to
recover for the generalized insult, hurt feelings and lingering
resentment which anyone could be expected to feel if he or she
were the recipient of an adverse employment action attributed to
discrimination."); Ali, 162 F.R.D. at 167-68 ("A person with no
'mental condition' may still suffer emotional distress which is
compensable").

However, if the plaintiff goes beyond the "garden variety"
type of claims, and identifies specific injuries caused by
defendants' actions, then a plaintiff may have put his mental
state "in controversy."  See Thiessen, 178 F.R.D. at 569.  If
so, and if there is good cause, then the Court may compel
plaintiff to undergo a mental examination. See id. at 569-70.
In Bowen, the Court listed five elements that, in addition to a
general emotional distress claim, could be evidence that

plaintiff placed his mental status "in controversy", namely: "(1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." Id. at 193 (citing Turner v. Imperial Stores, 161 F.R.D. 89, 95 (S.D.Cal. 1995)). In Bridges v. Eastman Kodak Co., 850 F.Supp. 216, 222 (S.D.N.Y. 1994), the Court also considered an allegation that a mental illness is "ongoing" to be evidence that a plaintiff has placed his mental injury in controversy. Id. (denying Rule 35 mental examination).

Although an offer of expert testimony would be evidence that the emotional distress claim is in controversy, a plaintiff cannot simply forgo presenting any expert or medical testimony in order to circumvent Rule 35. If a plaintiff has placed his mental status "in controversy," then a defendant is permitted to compel a Rule 35 examination, regardless of whether plaintiff intends to introduce medical expert testimony. See Thiessen, 178 F.R.D. at 571.

Defendants argue that plaintiff has put his mental state in controversy by producing the Naime report, and by making specific and ongoing allegations of emotional distress. With regard to the Naime report, plaintiff argues that Dr. Naime addresses plaintiff's mental state relative to both liability and damages. As to liability, defendants state that Dr. Naime makes repeated references to plaintiff's character traits describing him as a man with principals, someone with a will-not-back-down personality, and someone with superior cognitive ability. Defendants also argue that by labeling the Barnett Reports defamatory, Dr. Naime is opining that the statements are untrue and that plaintiff was bullied. Defendants further argue that Dr. Naime opines to the damages element of plaintiff's claim by stating that plaintiff was ostracized, and experienced stress, anger and pain as a result of his hostile workplace environment.

In addition to Dr. Naime's reports, defendants argue that plaintiff has put his mental state "in controversy" because he testified at his deposition that he suffered "a great amount of emotional distress"; that in 2009, after receiving a phone call from his supervisor, he was "very upset" and stated "I was angry, and my heart was racing. And it raced through the night.

I couldn't sleep, so I made an appointment with my doctor."
Defendants further argue that plaintiff's need to see his
cardiovascular doctor due to stress indicates that his emotional
claim is severe.  Defendants also argue that plaintiff is
suffering a specific psychiatric injury based on allegations by
plaintiff and Dr. Naime that plaintiff suffered retaliation and
character assassination resulting in emotional distress based on
statements by co-workers.  Finally, defendants argue that
plaintiff has placed his mental state in controversy because he
has alleged an "ongoing" injury.  Plaintiff has complained of
emotional distress from 2008, when the alleged harassment
started, until December 2011, when he stopped working.
Defendants argue that plaintiff is claiming ongoing emotional
distress because in December 2012, plaintiff filed a Tort Claims
Notice in which he claims "emotional distress damages" for
alleged "anguish" caused by the internal investigation conducted
in 2010.

Looking collectively at plaintiff's statements in his
complaint, in written discovery and deposition, as well as the
2012 Tort Claims Notice and Dr. Naime report, there is
insufficient evidence to support a finding that plaintiff has
placed his mental status "in controversy."  With regard to the

Naime report, the Court disagrees that the statements made in Dr. Naime's report place plaintiff's mental state "in controversy." Describing plaintiff's character traits or stating that he experienced stress and anger after experiencing alleged harassment neither raises plaintiff's emotional distress claims to a level of severe mental injury, nor does it highlight a specific mental injury. Those statements by Dr. Naime which do reference emotional distress are generalized statements and do not present a specific or severe mental injury. Even assuming that Dr. Naime's report is expert testimony, he is not being offered as an expert on mental injuries, and it is not clear that he would be recognized as such.[6]

Also, defendants have not shown that plaintiff has alleged an ongoing mental injury. Plaintiff states it was the production in 2012 of the Barnett Reports that caused him "anguish," "anger" and "stress." Thus, although plaintiff alleged that he suffered anguish, stress and anger in 2012, this was in response to being apprised of the Barnett Reports and, therefore, do not indicate that the original emotional distress

---

[6] The Court makes no ruling at this time as to the qualifications of any expert, or admissibility of any expert report as to either liability or damages.

experienced was ongoing.  In addition, plaintiff states that in
the 2012 Tort Claims Notice, that as of December 10, 2012, he
had no physical manifestations of his distress.

Furthermore, the cases cited by defendants in support of
their argument that plaintiff has put his emotional distress
claim in controversy, despite plaintiff's lack of a mental
health expert, do not support their argument.  Rather, the cases
indicate that "something more" needs to be in the record to
indicate that a mental injury is at issue.

For example, in <u>Thiessen</u>, the plaintiff's statements during
deposition convinced the Court that he had put his mental state
in controversy.  In particular, the Court found that,

> Plaintiff testified that defendants' alleged
> misconduct had "caused [him] some real
> health problems," including water in his
> lungs and congestive heart failure.
> Plaintiff further testified that he hadn't
> "slept well" since 1993 as a result of the
> "company's actions." Moreover, plaintiff
> claims that defendants' actions "came very
> close to causing the separation of [him] and
> [his] fiancee." Plaintiff also described
> himself as "very, very tired" and complained
> of getting "worn out much, much easier."
> Significantly, he linked these symptoms to
> defendants' alleged misconduct. Finally,
> plaintiff testified that he experienced, and
> still experiences, periods of great sadness
> or depression as a result of defendants'
> actions.

Thiessen, 178 F.R.D. at 570.

In Dahdal, the Court found that plaintiff put her mental condition "in controversy" based on medical records put into evidence of plaintiff's psychiatrist and psychologist, as well as deposition testimony by plaintiff. 1998 WL 37532 at *2. (finding that plaintiff testified that the sexual harassment by defendant caused or contributed to flashbacks of psychiatric treatment and sexual abuse, and that psychiatric medical records revealed more than "garden variety" of emotional distress and described plaintiff's "total relapse, her depression, sometimes severe, and her suicidal thoughts.").

In Ali, the Court found that plaintiff had "gone beyond a mere claim for emotional distress" when he stated that

> his "personal character and performance were
> severely and permanently damaged"; he "lost
> his self esteem and was embarrassed to call
> on his former customers" and others; he and
> his wife and son suffered "severe and
> permanent psychological damage"; his
> "humiliation and embarrassment" "created a
> great deal of anger and hatred within him"
> as well as family problems; he "suffered
> extreme emotional distress"; he "has been
> very depressed and remains depressed", and
> he has had an outbreak of skin and scalp
> rash attributed to the "ordeal" of his
> termination.

162 F.R.D. at 168 (also finding good cause because plaintiff was seeking substantial damages for his emotional distress claims and defendant should not be forced to limit his case to mere cross examination).

As the above cases illuminate, general claims of stress and anger in response to alleged harassment do not rise to the level needed to compel a mental examination pursuant to the requirements in Rule 35. Although we agree with defendants that in Thiessen, Dahdal, and Ali, plaintiffs' willingness to forgo presenting a mental expert did not protect them from a Rule 35 examination, in all those cases, the plaintiffs' testimony of depression, flashbacks of sexual abuse, severe and permanent psychological damage, or suicidal thoughts went beyond "garden variety" allegations of emotional distress. Such testimony was central to the Courts' decisions in those cases and is simply not present in this case.

Accordingly, the decision by the magistrate judge was neither clearly erroneous nor contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L. Civ. R. 72. 1(c)(1)(A). Thus, the order of the magistrate judge denying defendants'

request to compel a psychiatric examination of the plaintiff pursuant to Rule 35 will be affirmed.[7]

**C.  Appeal of Magistrate Judge's Denial of Plaintiff's Request for Leave to Serve a Public Sector Budget Expert/Fiscal Expert Report.**

Plaintiff appeals the magistrate judge's order entered on February 8, 2013, [docket no. 205] denying his request for a "fiscal" expert to address budget and layoff issues involving Cape May ("expert budget report"),[8] and his order entered on May 10, 2013 [docket no. 282] denying plaintiff's motion for reconsideration.  The underlying facts were set forth in the magistrate judge's orders and, therefore, will only be outlined here.

Plaintiff filed his complaint in 2009.  On October 21, 2011, plaintiff filed a motion to amend his complaint.  The amended complaint alleged facts in connection with the

_____

[7] Since the Court finds that plaintiff has not placed his mental state "in controversy," there is no need to determine whether defendants have shown "good cause" to compel a mental health examination, or whether "good cause" was present to reopen discovery to allow the examination.

[8] That Order also granted plaintiff's request for leave to serve a supplemental economic expert report, and plaintiff's request for leave to serve a "workplace bullying/mobbing" expert report.

plaintiff's anticipated layoff in December 2011.  On December 1, 2011, plaintiff was terminated.[9]  On June 20, 2012, plaintiff's motion to amend was granted, and on June 22, 2012 the first amended complaint was filed.

In September 2012, additional discovery was produced and approximately fifteen depositions were held from September 2012 until January 2013.

On December 3, 2012, plaintiff filed a motion for leave to file a second amended complaint to clarify that the plaintiff had been terminated and was asserting a wrongful termination claim.  A hearing on the motion for leave to file the second amended complaint was held on December 20, 2012, and the motion granted.  The second amended complaint was filed on December 31, 2012.

On January 22, 2013, plaintiff filed a motion to extend discovery and serve additional expert reports, including a

---

[9] There is some confusion as to the actual date of plaintiff's termination.  Some reference December 1, 2011, some reference December 2011, generally, and some reference December 2011/January 2012.  The exact date of termination is not at issue, and a later January 2012 date would not alter the Court's opinion.  For present purposes, the Court will assume plaintiff was terminated on December 1, 2011.

fiscal expert report to address budget and layoff issues
involving Cape May.  Plaintiff's motion was granted in part, and
denied in part.  Plaintiff sought reconsideration of the denial
of his request to submit an expert budget report which was also
denied.  Plaintiff now appeals those decisions.

The main reason why plaintiff's request to submit an expert
budget report was denied was because plaintiff knew of his
impending lay-off in August 2011,[10] and should have made the
request for an expert much earlier.  Specifically, the
magistrate judge found that plaintiff failed to "address one of
the central justifications the Court gave for its decision,
i.e., that plaintiff raised the subject budget issue in his
Amended and Supplemental Complaint filed on June 22, 2012.  And,
therefore, he had more than reasonable opportunity to take
discovery and produce a timely expert report on Cape May's
fiscal and budget issues."

Plaintiff denies that he was dilatory in procuring a fiscal
expert and offers several, sometimes overlapping, reasons why he

_____

[10] Plaintiff's first amended complaint alleges that on August 23,
2011, the defendant Cape May passed a resolution which "set the
stage for the outsourcing of the … Youth Service Program."
[5/10/13 Order at 2].

was unable to request an expert prior to January 22, 2013.
Plaintiff's arguments appear to fall into the following
categories: (1) Until plaintiff was granted leave to file a
second amended complaint and assert a wrongful termination
claim, there was no need to obtain a fiscal expert; (2) After
the plaintiff filed the amended second complaint, it was error
not to permit plaintiff to obtain a fiscal expert to prove his
claim; (3) Due to the late and large production of discovery and
subsequent depositions in the fall of 2012, plaintiff was
overburdened and unable to request a fiscal expert until January
2013; (4) Due to the late deposition of Ed Grant, defendant's
budget witness, the need for a fiscal expert did not arise until
after Grant's deposition.

Even if the Court accepts plaintiff's first argument that
until he filed his wrongful termination claim he had no need of
a fiscal expert, plaintiff has not shown any error on the part
of the magistrate judge to deny leave for extended discovery to
obtain a fiscal expert.  The key point is that plaintiff was
terminated in December 2011.  At that time, plaintiff should
have notified the Court that he intended to amend his complaint
to add a wrongful termination claim.  Plaintiff states that at
the time he was terminated, his first motion for leave to amend

the complaint was pending (which did not include an amendment for a wrongful termination claim because it was filed approximately three months prior to the termination). What plaintiff does not explain is why, when the first motion for leave to amend was pending, he did not inform the Court that the facts had changed and that, based on a change in facts, he intended to assert a wrongful termination claim. Plaintiff should have notified the Court that he intended to withdraw the first motion, or supplement the motion, to include a wrongful termination claim now that he was, in fact, terminated.[11] In sum, although plaintiff argues that he moved to extend discovery for a fiscal expert shortly after he filed his second amended complaint, he has not provided any explanation as to why he waited a year to move to have his complaint amended to add a wrongful termination claim. See Prime Ins. Syndicate v. United

---

[11] Plaintiff states in his reply that he had good reason to wait to file his motion for leave to file a second amended complaint because on July 6, 2012, defendants had filed a motion to dismiss based on immunity. We are unconvinced this justifies a delay. First, this does not explain why plaintiff did not file between December 2011 and July 2012. Second, plaintiff filed his motion for leave to file a second amended complaint prior to the motion to dismiss being decided (which rendered the motion to dismiss "moot"). And, finally, it is common practice for a plaintiff to file a motion to amend a complaint after a defendant files a motion to dismiss.

Risk Management Services, Inc., No. 03-1050, 2006 WL 2085388, at
*5 (D.N.J. July 25, 2006) (affirming magistrate judge's refusal
to permit leave to amend a complaint where plaintiffs admittedly
had knowledge of the relevant allegations since October 2004,
but waited until April of 2006 to make their request for
amendment).

Plaintiff also argues that after permitting him to amend
his complaint, it was error for the magistrate judge to deny him
leave to submit a fiscal expert report.  Plaintiff states that
if there was any finding on plaintiff's part of undue delay, bad
faith, dilatory motive, unfair prejudice, or futility of
amendment, the magistrate judge would have denied his motion for
leave to amend.  Plaintiff argues that since none of these bases
for denial was present, the magistrate judge should not have
found that plaintiff was dilatory in seeking leave for a fiscal
expert.

The standard for leave to amend a complaint is a liberal
one.  See Fed.R.Civ.P. 15(a)(2); Dole v. Arco Chemical Co., 921
F .2d 484, 487 (3d Cir. 1990) (exercising a strong liberality in
allowing amendments under Rule 15 in order to ensure that claims
will be decided on the merits rather than on technicalities);
Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989)(same).  An

amendment must be permitted in the absence of undue delay, bad

faith, dilatory motive, unfair prejudice, or futility of

amendment.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108

(3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182

(1962)).  In cases where the party seeks to amend after the

applicable deadline in the Court's scheduling order, there must

also be a finding of "good cause" pursuant to Federal Rule of

Civil Procedure 16(b)(4).  See Fed.R.Civ.P. 16(b)(4) ("[a]

schedule may be modified only for good cause and with judge's

consent.").

     Here, it is clear from the transcript of the hearing held

on December 20, 2012, that the Court granted plaintiff's motion

for leave to file a second amended complaint with the

understanding that the second amended complaint was not

substantially different from the first amended complaint filed

in June 2012:

          THE COURT: Plaintiff, it seems to the Court
          you've made several changes in your proposed
          second amended complaint, but it seems to
          the Court that really the crux of the
          amendment is Paragraphs 92 and 93, and in
          those 3 paragraphs it appears to the Court
          that you're essentially alleging -- not in
          these words, not in these exact words, but
          you're saying that, Paragraph 92, the layoff
          in December, 2011 was motivated and intended
          to retaliate and penalize plaintiff for his

complaints and that the conduct constituted
a wrongful and constructive discharge. Am I
correct, is that the crux -- I know there's
the other changes but is that the crux of
the substance of your proposed changes?

MR. McFADDEN: That's correct, Judge.

THE COURT: So I'm not quite sure
substantively if there's much of a
difference between the existing complaint
and the proposed amended complaint; at the
end of the day, it's the same counts in the
complaint. You have four counts in your
complaint, they're all –

MR. McFADDEN: Yes.

THE COURT: -- the same as the proposed
amended complaint.

3:24 – 4:11; 6:16 – 23 [Doc. 168]

The Court also expressed its concern that no other

discovery (other than what had been previously discussed) would

arise as a result of amending the complaint.

THE COURT: Can I assume that no additional
discovery apart from what you have planned
is necessary because of these amendments?

…

MR. McFADDEN: Yeah. Other than these budget
issues, which I proposed could be satisfied
with simply documents, and the ...
[economic expert's] report -- I don't know
offhand, I believe his report if you
extrapolate it would be enough to cover
that.

Although plaintiff mentioned during the hearing his need to supplement the expert report, depose the defendant's budget witness, and perhaps submit a few special interrogatories to narrow budget issues, at no time did he mention the need for an additional fiscal expert. In fact, plaintiff stated that he was only trying to "clarify" a damages issue in the complaint and "would more accurately consider that a supplemental complaint[]".

In making its ruling, the Court, again, stated that it was granting plaintiff leave to amend based on the understanding that the second amended complaint only clarified the fact that plaintiff was now terminated and that nothing substantive was being added:

> THE COURT: In essence, the Court agrees with plaintiff and I don't think we're hearing too much opposition [from] the defendant, that substantively the proposed amended complaint does not add new allegations but merely, in defendant's word, crystallizes and clarifies plaintiff's allegations. The crux of it, as the Court set forth as Paragraphs 92 and 93, where plaintiff is alleging that his layoff was motivated and intended to retaliate and penalize him because of the alleged wrongful actions that he complained about. This is not a surprise to the defendants; this was alleged by plaintiffs in the first amended complaint, so it comes as no surprise to defendants.

> Plaintiffs are correct that, although the
> first amended complaint was filed in June,
> the motion itself was filed before he was
> laid off. Since the Court finds that there's
> no significant or material substantive
> change to plaintiff's allegations, he's
> merely clarifying his allegations, and the
> Court finds no prejudice to the defendants,
> the Court will grant the motion.

> 14:24 – 15:16. [Doc. 168]

The Court took the time and made specific inquiries at this

hearing regarding the overall effect of filing the second

amended complaint and, based on the responses by plaintiff's

counsel, was given the impression that the filing of the second

amended complaint was nothing more than a vehicle to clarify

that plaintiff had been terminated and that some limited

discovery might ensue regarding his damages claim.  The

magistrate judge specifically asked plaintiff about his

intentions regarding the second amended complaint and at no time

during that hearing did plaintiff ever suggest that he needed a

fiscal or budget expert.

After making these assurances to the Court, plaintiff now

argues that the filing of the second amended complaint raised a

wholly new claim upon which an additional fiscal expert is

required.  Plaintiff cannot have it both ways.  Either the

second amended complaint raised a new cause of action to which discovery should be extended so that he can obtain additional experts, or the second amended complaint only served to clarify what had been asserted in October 2011 when plaintiff filed his first motion for leave to amend his complaint.

Given that plaintiff originally sought only clarification of his wrongful termination claim, and limited additional discovery (which the magistrate judge granted in terms of a supplemental economic expert report, the deposing of defendants' budget witness, and a new "workplace bullying/mobbing" expert), the magistrate judge did not err in refusing to extend the discovery deadlines once again for an additional expert. See Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) (citing Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3d Cir. 1986)) ("To argue that there should be a liberal policy of freely permitting amendments is to ignore, in an old case such as this one, the purposes of case management and the scheduling orders which 'are at the heart of case management.'").[12]

---

[12] Plaintiff argues that since he has a statutory right to file a wrongful termination claim within one year under CEPA and two years under § 1983, after the claim accrues, that the magistrate

Plaintiff further argues that it was error for the magistrate judge to deny him leave to submit a fiscal expert report on the basis of "dilatoriness" because plaintiff was saddled with a very large document production in September 2012, and deposed over fifteen witnesses from September 2012 to January 2013, as well motion practice on discovery issues.

The Court is mindful of the high volume of activity in this case from September 2012 until January 2013, and will take into consideration heavy caseloads when deciding requests for

---

judge erred in not permitting him a fiscal expert to prove his wrongful termination claim.  This argument misses the point. Plaintiff brought his wrongful termination claim, a year (possibly more) after it accrued, beyond applicable discovery deadlines.  The magistrate judge denied a request to, again, extend expert discovery deadlines because plaintiff failed to make a timely request. Decisions on discovery deadlines are within the discretion of the Court.  See Cyberworld Enterprise Technologies, Inc. v. Napolitano, 602 F.3d 189, 200 (3d Cir. 2010) (finding no abuse of discretion in the district court's denial of further discovery).

Plaintiff also argues that since he was permitted to provide a supplemental economic expert report and a new workplace bullying/mobbing expert report, that a budget expert would not cause any additional delay.  First, any new expert has the potential to cause additional delay. Second, whether the additional expert would incur additional delay was not the only consideration.  As fully explained by the magistrate judge, and in this opinion, the potential need for an additional expert should have been raised much earlier in the litigation.

extensions.  Irrespective of the flurry of activity during September 2012 until January 2013, however, plaintiff has not explained how this prevented him from asking leave to amend his complaint from December 2011 until August 2012, or even raising the issue with the Court at any time during 2012.  Even as late as December 2012, plaintiff did not inform the Court that he intended to seek an expert on budget and fiscal issues.  As explained by the magistrate judge, plaintiff was fully aware in August 2011, that defendants intended to lay-off plaintiff on grounds that Cape May was experiencing fiscal problems. Plaintiff was fully aware of his potential need for an expert and could have raised the issue at any time, and certainly during the various hearing and conferences concerning discovery after December 2011.  Thus, plaintiff is not excused from his untimely request for a fiscal expert due to increased discovery demands.

Finally, plaintiff argues that his need for a fiscal expert did not arise until after he deposed Ed Grant, Cape May's Treasurer and Chief Financial Officer on January 4, 2013.  The late deposition of Grant, however, is a result of plaintiff not requesting his deposition until December 18, 2012, over two weeks after fact discovery closed on December 3, 2012.  The

30

Court assumes that the late request is due, in part, to the late discovery by defendants that occurred in the fall 2012. However, plaintiff was aware by August 2011, that the defendants were basing plaintiff's lay-off on budgetary considerations and, therefore, this fact was not a surprise revealed in the September 2012 discovery. Also, defendants are not offering Grant as an expert, but as a witness. Therefore, there is no need to rebut any expert testimony by Grant.[13]

Accordingly, the decision by the magistrate judge was neither clearly erroneous nor contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L. Civ. R. 72. 1(c)(1)(A). Thus, the order of the magistrate judge denying plaintiff's

---

[13] Plaintiff also argues that he needs a budget expert to rebut Grant because, when deposed, Grant denied having stated (as quoted in a newspaper) that there would be no layoffs if plaintiff's union agreed to wage concessions. Plaintiff argues that if Grant admitted to the quote, then there "might" be no need for a budget expert to show that what Grant is quoted as saying is true. What plaintiff "might" or "might not" require as a result of another's testimony does not provide grounds to overturn the magistrate judge's decision. Moreover, in plaintiff's reply, he states that he has obtained transcripts of a council hearing, which apparently reveals that Grant was accurately quoted. In any event, Grant was not a surprise witness, is not an expert witness, and there is no error in the magistrate judge's ruling not to extend expert discovery to obtain a new fiscal expert on grounds that a single statement "might" require expert explanation.

request to extend discovery to obtain a fiscal expert shall be affirmed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion appealing the magistrate judge's orders entered on April 19, 2013 and April 22, 2013 [docket nos. 261, 268] denying defendants' motion to compel a psychiatric examination of the plaintiff is denied. Plaintiff's motion appealing the magistrate judge's order entered on May 10, 2013 [docket no. 282] denying reconsideration of plaintiff's request for leave to serve a public sector budget expert/fiscal expert report is denied.

An appropriate Order will be entered.



       s/Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

Dated:    October 18, 2013

At Camden, New Jersey